Walter J. Brosnan v. Commissioner.
Brosnan v. Commissioner
Docket No. 57313.
United States Tax Court
T.C. Memo 1959-66; 1959 Tax Ct. Memo LEXIS 188; 18 T.C.M. (CCH) 336; T.C.M. (RIA) 59066; March 31, 1959
*188 Deductions: Business v. nonbusiness bad debts: Advances to corporations. - Taxpayer, who was a majority stockholder in two corporations, advanced loans to them, guaranteed notes of one of them and made unsuccessful attempts to acquire interests in a number of other corporations during 1948-1950. Loans to one of the corporations became worthless in 1950. The Tax Court held that taxpayer was not in the trade or business of forming, promoting and financing corporations. Therefore, the worthless loans were nonbusiness bad debts. Laurence H. Lougee, Esq., Salter Building, Worcester, Mass., for the petitioner. Raymond T. Mahon, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in petitioner's income tax for 1950 of $5,297.39. Petitioner apparently concedes that the amount in dispute is $5,262.35. The only issue is whether petitioner's bad debt loss resulting from unpaid loans to a corporation constituted a business or nonbusiness bad debt. Findings of Fact Certain facts were stipulated and are hereby found. Petitioner filed his individual Federal income tax return for the calendar year *189 1950 with the collector of internal revenue for the district of Massachusetts. Petitioner received a degree in mechanical engineering and attended a graduate business school. Since January 4, 1947, Worcester Pressed Aluminum Corporation, a manufacturer of metal stampings, has employed petitioner as president and general manager. Petitioner's hours of employment were from 8 a.m. through 5 p.m., 5 days a week. In May 1947, petitioner acquired an interest in Worcester Engineering & Machine Co., hereafter called Worcester, a manufacturer of jigs, fixtures, tools, dies and machinery. Petitioner owned 51 of 100 shares of common stock outstanding. Petitioner's wife and a revocable trust for their son owned 20 and 14 shares, respectively. Petitioner, as a director of Worcester, decided its policy and served without compensation. Petitioner made loans to Worcester bearing interest at the annual rate of 7 per cent as follows: 5/14/47
$10,000.00
7/ 3/48
400.00
7/15/48
900.00
7/22/48
100.00
8/ 3/48
800.00
1/27/49
650.00
1/31/49
1,300.00
3/31/49
50.00
4/ 9/49
4,000.00
8/ 1/49
866.90
8/ 8/49
200.00 Worcester repaid petitioner for these loans. From *190 1949 through 1951, Worcester borrowed money from The Mechanics National Bank of Worcester, Massachusetts, and signed promissory notes as evidence of these loans. In 1949, 1950 and 1951, petitioner guaranteed many of these notes as follows: Number
Total
Year
of notes
amount
1949
17
$15,205
1950
47
66,623
1951
30
89,741 The bank did not request petitioner to pay any of these notes. On May 10, 1948, petitioner endorsed a note given by Worcester to Meyer Cohan on that date in the amount of $6,000 and mortgaged two pieces of property as security. Worcester repaid the note and the mortgage was discharged on November 4, 1950. On September 20, 1950, January 3, 1951 and April 1, 1952, petitioner leased machine tools to Worcester. The September 20 and January 3 leases were for a term of 1 year. The April 1 lease was for a term of 1 year and 9 months. Each lease covered different items. In 1954 petitioner sold these machine tools to Worcester at their depreciated value. In 1948, petitioner and the chief engineer of Worcester organized Adjustomatic Manufacturing Corporation, hereafter called Adjustomatic, to develop and manufacture ironing boards. Adjustomatic *191 issued 1,500 shares of common stock as follows: Number of
Individual
shares
Petitioner
1,000
President of Worcester
100
Chief engineer of Worcester
100
Chief engineer of Worcester
Pressed Aluminum
300 Petitioner paid $10,000 for his interest. Petitioner, as a director of Adjustomatic, decided its policy and served without compensation. Petitioner devoted approximately 20 hours a week to the businesses of Worcester and Adjustomatic. On February 21, 1949 and March 21, 1949, petitioner loaned to Adjustomatic the respective amounts of $10,000 and $5,000. Adjustomatic gave petitioner a note for each of the loans bearing interest at the annual rate of 7 per cent. During the latter part of 1949, petitioner loaned an additional $600 to Adjustomatic. These loans totaling $15,600 became worthless in 1950 and petitioner never received interest on them. In 1948 and 1949, petitioner unsuccessfully attempted to acquire interests in the following enterprises: Bancroft Pressed Metal Company, Carroll Pressed Metal Company and Bartlett-Thompson Company. In 1950, petitioner unsuccessfully attempted to acquire interests in the following corporations: Algonquin *192 Tool & Die Company, Worcester Stamped Metal Company, Worcester Pressed Aluminum Corporation, and American Aluminum Company. In 1950, petitioner advised the respective developers of a portable dishwashing machine and a process for applying a plating finish as to the organization of corporations. None of these materialized. Petitioner in 1950 was not engaged in the business of promoting, organizing, forming, managing and financing business enterprises. The activities from 1947 through 1950 did not constitute a trade or business carried on by him and the bad debt loss was not proximately related to any business of petitioner. Opinion The familiar situation is again presented here of an investor, or possibly even a promoter, of a single corporate venture, attempting to deduct as a business bad debt the loans he has made to his company. , affirming per curiam. . Recognizing that the business of the corporation is not that of the individual, ; , affirmed per curiam (C.A. 3) ; *193 (Oct. 15, 1958), the taxpayer attempts to have himself classed as "promoter" by profession. Cf. ; , with . To do so he must establish that he is in the trade or business of forming, promoting and financing corporations generally, so that, for example, it could be said that he was holding the stock or securities in question for sale to customers in the regular course of that trade or business. This is essentially a question of fact. . We have found that on this record the one instance of forming, and the two instances of lending, to the corporations which petitioner or his family controlled are entirely inadequate to put him in the promoting business. And certainly the few occasions of unsuccessful discussions of additional ventures fail to indicate any such activity as would constitute a business. See (Sept. 12, 1958). To quote from , *194 affirming : "Petitioner here claims that his continued use of the corporate form coupled with the two hundred and fifty loan transactions in which he participated show conclusively that he was a promoter within the meaning of these cases. What petitioner fails to recognize is the distinction between carrying on one's business through a corporate form, which, of course, requires some organizing and financing, and the business of dealing in corporations, which may likewise require some financing arrangements. * * * [If the former] the corporate entity is the primary debtor and stockholder loans to protect his investment or increase its value do not create a separate business for the stockholders." Decision will be entered for the respondent.